IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Pamela May,<br><br>                  Plaintiff,<br><br>    vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,[1]<br><br>               Defendant. | Civil Action No. 6:13-1360-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

Charles May brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff's husband, Charles May, filed an application for disability insurance benefits ("DIB") on July 7, 2009, alleging that he became unable to work on March 1, 2008. This date was later amended to July 8, 2009. The application was denied initially and on reconsideration by the Social Security Administration. On January 4, 2011, Mr. May requested a hearing. The administrative law judge ("ALJ"), before whom Mr. May

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

and George B. Paprocki, an impartial vocational expert, appeared on December 13, 2011, considered the case *de novo* and, on January 27, 2012, found that Mr. May was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on March 22, 2013. Mr. May then filed this action for judicial review. On July 29, 2013, Mr. May passed away. On August 15, 2013, a motion to substitute party was filed by his widow, Pamela May. The undersigned granted the motion on August 16, 2013. For simplicity's sake, Mr. May will be referred to hereafter as "the plaintiff."

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant will meet the insured status requirements of the Social Security Act through December 31, 2014.

(2)    The claimant has not engaged in substantial gainful activity since July 8, 2009, the amended alleged onset date (20 C.F.R § 404.1571 *et seq*).

(3)    The claimant has the following severe impairment: degenerative disc disease (20 C.F.R. § 404.1520(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). He can occasionally lift and/or carry up to 10 pounds as defined in the Dictionary of Occupational Titles (DOT) and regulations. He is capable of standing and/or walking for up to 2 hours and sitting for up to 6 hours in an eight-hour workday with normal breaks and with the ability, optionally, to alternate between sitting and standing as needed without being off task.

2

(6)    The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7)    The claimant was born on October 7, 1960, and was 48 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.    The claimant subsequently changed age category to advanced age (20 C.F.R. § 404.1563).[3]

(8)    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

(9)    The claimant has acquired work skills from past relevant work (20 C.F.R. § 404.1568).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. §§ 404.1569, 404.1569(a), and 404.1568(d)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2009, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."    42 U.S.C. § 423(a).    "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

---

[3]Under the regulations, the plaintiff was actually defined as a "younger person" at age 48 on the alleged onset date and subsequently changed age category to a "person closely approaching advanced age" (age 50-54).  20 C.F.R. § 404.1563(c), (d). This error does not appear to have any bearing on the issues presented herein.

3

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

4

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

### *Prior to Alleged Onset of Disability*

The plaintiff reportedly experienced back pain beginning in 1978 (Tr. 439). The record reflects treatment for his back beginning in April 2008 (Tr. 321-22, 329-30, 366, 442-52, 457-58).

On December 23, 2008, the plaintiff was seen by Dr. Ray B. Vaughters, Jr., for chest pain and shortness of breath. He was referred to a cardiologist, Dr. David R. Cundey at Carolina Heart and Vascular Center, who recommended the plaintiff undergo a

5

CTA of his coronary arteries (Tr. 309, 367). On January 5, 2009, the plaintiff reported that he had no energy and that he always felt tired (Tr. 322). On February 2, 2009, the plaintiff was seen for depression and acute back pain (Tr. 386). On February 6, 2009, the plaintiff returned with continued back pain (Tr. 370).

On February 15, 2009, the plaintiff went to the emergency room with shortness of breath and apparent depression. A CT scan of the plaintiff's chest showed some linear atelectasis (partial or complete collapse of a lung or lobe of a lung) in the left lower lobe of his lung and a follow-up was recommended (Tr. 265-66).

On March 2, 2009, the plaintiff was seen for chronic obstructive pulmonary disease ("COPD") by Dr. Miroslav B. Zotovic. He stated that Xanax decreased his anxiety level (Tr. 299).

On March 3, 2009, the plaintiff was seen by Dr. Vaughters for depression and back pain (Tr. 365). On March 6, 2009, Dr. Timothy Shannon of Carolina Musculoskeletal Institute wrote that the plaintiff had low back pain probably secondary to degenerative disk disease with left lower extremity pain. The plaintiff had mild tenderness to palpation of the lumbosacral muscles and a positive straight leg raise test at 45 degrees with positive sciatic nerve tension signs. Dr. Shannon recommended injections (Tr. 329-30).

On April 6, 2009, the plaintiff reported to Dr. Vaughters that he had been receiving cortisone injections for his lower back (Tr. 322). On May 26, 2009, the plaintiff continued to have lower back and left side pain (Tr. 321).

In June 2009, an MRI of the plaintiff's back showed degenerative disc disease at two levels of the lumbar spine, with disc bulges and some encroachment of the spaces in the spinal cord through which spinal nerves pass (neural foramen) (Tr. 331). Dr. Ty Carter of Carolina Musculoskeletal Institute diagnosed lumbar degenerative disc disease, osteoarthritis (spondylosis), narrowing of the spinal canal (spinal stenosis), and left leg radiculopathy (Tr. 335). The plaintiff was exquisitely tender in his lumbar spine, midline,

6

and paraspinal area extending to the left buttock.  Dr. Carter wrote that the plaintiff would benefit from surgical intervention (Tr. 331).

On July 7, 2009, the plaintiff saw Dr. Vaughters and was anxious about back surgery and was depressed.  He had muscle aches and back pain (Tr. 364).

**After Alleged Onset of Disability**

On July 8, 2009, Dr. Carter performed a transforaminal lumbar interbody fusion and placement of interbody fusion Peek cages of L4-L5 and L5-S1 (Tr. 332-37). About two weeks after the surgery, x-rays showed that the surgical hardware was well-positioned.  The plaintiff reported that a pain patch helped his symptoms.  Dr. Carter instructed him to continue wearing a back brace and to increase his activities (Tr. 334).

In August 2009, the plaintiff completed a questionnaire regarding his activities in relation to his Social Security disability claim.  The plaintiff had custody of his two children (ages nine and six); he lived with his children and his girlfriend.  He said that, during a typical day, he went to the grocery store, visited his mother, and then picked his children up from school.  He also prepared meals and did housework (with help from his girlfriend); helped his children with their homework; took his children to birthday parties, school events, and church; talked with friends on the phone; and drove a truck (Tr. 194-206).

The plaintiff was seen by Dr. Vaughters on August 10, 2009, after his lumbar fusion surgery.  His back was better, but he still had a lot of pain (Tr. 321).

That same month, Dr. Carter completed two questionnaires in relation to the plaintiff's Social Security claim.  In the first, titled "Clinical Assessment of Pain," Dr. Carter opined that pain was "present to such an extent as to be distracting to adequate performance of daily activities or work" (Tr. 253-54; *duplicated at* Tr. 345, 453-54).  In the second, titled "Physical Residual Functional Capacity Questionnaire," Dr. Carter opined that the plaintiff could only sit and stand/walk for a total of about two hours each in an eight-hour day. He further opined that the plaintiff was limited to lifting 20 pounds rarely and ten

7

pounds occasionally.  His impairments would likely produce good and bad days, and he would likely be absent from work about four days per month (Tr. 340-44; *duplicated at* Tr. 467).

In September 2009, Dr. Carter noted that the plaintiff still had some pain, but was "generally doing okay." X-rays again showed well-positioned surgical hardware.  Dr. Carter instructed the plaintiff to gradually increase his activities and to return in four months (Tr. 338).

The plaintiff was seen by Dr. Zotovicon September 2, 2009, for a follow-up for anxiety and COPD.  Wellbutrin was prescribed (Tr. 297).

On October 12, 2009, state agency physician William Hopkins, M.D., reviewed the record and opined that the plaintiff had abilities consistent with light work (Tr. 271-78, 410-17).

On October 16, 2009, psychologist Xanthia Harkness opined that the plaintiff was mildly restricted in activities of daily living and had mild difficulties in maintaining social functioning, concentration, persistence, or pace due to his depression and anxiety (Tr. 282-289).

On November 23, 2009, Dr. Zotovic saw the plaintiff with a moderate obstructive pattern and tachycardia (Tr. 296).

In December 2009, the plaintiff returned to Dr. Carter and reported that his back pain had improved and his leg pain was gone.  X-rays continued to show well-positioned surgical hardware.  Dr. Carter instructed the plaintiff to increase his activities and return in six months (Tr. 346).

On February 10, 2010, the plaintiff saw Dr. Shannon and reported numbness of the right ring, small, and middle fingers beginning in January 2010.  Dr. Shannon indicated that the plaintiff had right upper extremity numbness along the ulnar nerve

8

distribution that extended into the C6 dermatome (Tr. 347).   The plaintiff also saw Dr. Vaughters on this date for back pain and anxiety (Tr. 320).

On March 1, 2010, Dr. Cundey wrote that the plaintiff's back surgery had not helped his back pain.   The plaintiff's coronary artery disease was stable (Tr. 419-20).   On March 18, 2010, Dr. Shannon found that the plaintiff had right upper extremity numbness, secondary to ulnar neuropathy at the wrist, shown by electrodiagnostic studies from March 5, 2010 (Tr. 348).   On March 22, 2010, an MRI of the right wrist demonstrated right ulnar mononeuropathy (Tr 351).

On April 1, 2010, Dr. Shannon wrote that the plaintiff had right wrist pain, probably secondary to degenerative joint disease, but could also be related to a ganglion cyst off of the radial ulnar joint.   Dr. Shannon gave the plaintiff a prescription for Mobic, which could also help with the plaintiff's back problems (Tr. 349)

In May 2010, the plaintiff completed a second questionnaire regarding his activities in relation to his Social Security claim.   He said that he used a back brace as needed.   The plaintiff reported activities including doing laundry and light cleaning, driving, shopping for groceries and clothing, taking his children to school and picking them up afterwards, taking his children out to eat ("because I am unable to stand long enough to cook a meal"), and taking his mother to medical appointments (Tr. 228-35).

On July 1, 2010, Dr. Jeanne Wright in a Psychiatric Review Technique opined that the plaintiff was mildly restricted in activities of daily living and had mild difficulties in maintaining social functioning, concentration, persistence, or pace due to his depression and anxiety (Tr. 390-400).

On August 10, 2010, the plaintiff presented to Dr. Blake Moore for a physical examination in relation to his Social Security claim.   The plaintiff complained of chronic back and neck pain, with numbness extending into his hand.   He estimated that he could lift up to 20 pounds, stand for 30 minutes at a time, and sit and walk for 60 minutes at a

time (each). The plaintiff admitted that he could cook, wash dishes, sweep, mop, shop, and climb stairs. Dr. Moore observed that, during the exam, the plaintiff was "somewhat poorly cooperative." The plaintiff failed to turn off his cell phone as requested by Dr. Moore and continued to use the phone throughout the course of his interview.  On examination, the plaintiff had positive straight leg raising on the left side; reduced range of motion in his back but full range of motion in his neck; a normal gait (without an assistive device); intact sensation and reflexes; intact squatting, heel- and toe-standing, and heel-to-toe walking; and full 5/5 muscle strength.  Dr. Moore reviewed an EMG nerve conduction study showing damage to the nerves in the plaintiff's right wrist (mononeuropathy) and an x-ray showing a cyst in the plaintiff's right wrist.  Dr. Moore assessed a history of facet syndrome and failed back syndrome, but did not identify any limitations in the plaintiff's abilities (Tr. 405-09).

On March 14, 2011, the plaintiff saw Dr. Vaughters on August 11, 2010, for anxiety and hypertension and on September 22, 2010, for pain and anxiety (Tr. 424-25).  On October 13, 2010, he reported lower back pain and requested a handicap placard (Tr. 425).

On December 1, 2010, state agency physician Dr. Ellen Humphries reviewed the record and opined that the plaintiff had abilities consistent with light work with limitations of never crawling or climbing ladders, ropes, and scaffolds, and avoidance of hazards (Tr. 410-17).

On March 14, 2011, the plaintiff saw Dr. Vaughters for anxiety and neck and lower back pain, and he was seen on August 22, 2011, for hypertension and chronic pain (Tr. 426).

On November 21, 2011, the plaintiff presented to the Royal Pain Center for an initial appointment.  The plaintiff complained of neck and back pain and rated his pain without medication as a "4" or "5" out of 10 (10 being the worst possible pain).  He did not rate his pain with medication.  Care providers made minimal examination findings and

assessed degenerative disc disease and lumbar and cervical radiculopathy (Tr. 436-38).

### Plaintiff's Testimony

The plaintiff was represented by counsel during the administrative hearing (Tr. 41, 110). The plaintiff performed at least part-time irrigation work until shortly before his July 2009 back surgery (Tr. 62-65, 70-71). When asked whether he had considered vocational rehabilitation following the surgery, the plaintiff responded, "it's kind of hard to go to school when you have two small children" (Tr. 72). The plaintiff was the primary caregiver for his children (ages nine and 12) (Tr. 58). The plaintiff and his children lived with the plaintiff's girlfriend, who worked full-time (Tr. 59). Although the plaintiff previously stated that he cooked quick meals and did laundry (Tr. 199, 406), he testified that his girlfriend did these chores (Tr. 77). The plaintiff stated that he handled his own self-care, drove his truck, took his children to and from school, and went to the grocery store (Tr. 59, 74-76, 81-82). The plaintiff estimated that he could lift a gallon of milk (which weighs about eight pounds) and stand for one hour at a time (for two-and-a-half hours total in an eight-hour day) (Tr. 78-79). When asked how long he could sit, the plaintiff said that mostly he lays down (Tr. 79). The plaintiff (who lived in Aiken, South Carolina) had driven to Myrtle Beach that summer (Tr. 43, 83-84). In 2010, the plaintiff took his girlfriend and his children on a seven-day cruise (Tr. 84).

### Vocational Expert Testimony

Vocational expert George Paprocki testified in response to a series of hypothetical questions, one of which concerned an individual of the plaintiff's education and work experience who could do sedentary work as defined in 20 C.F.R. § 404.1567(a), with "the option to alternate between sitting and standing as needed without being off task" (Tr. 97). The vocational expert testified that the hypothetical individual could do the sedentary jobs of receptionist, information clerk, and service clerk (Tr. 97-98). The expert said that his testimony was consistent with the information found in the *Dictionary of Occupational*

11

*Titles* ("*DOT*") (Tr. 99).  However, the expert observed that sit/stand options are not addressed by the *DOT* and stated that his testimony on this issue was based on his professional experience (Tr. 99-100; *see also* Tr. 90-91 (vocational expert's testimony regarding his professional experience), 155-56 (vocational expert resume)).

### Evidence Submitted to the Appeals Council

After the ALJ's January 27, 2012, decision, the plaintiff requested review by the Appeals Council (Tr. 18) and submitted additional evidence, some of which pre-dated the ALJ's decision (Tr. 491, 476-77, 486), but most of which post-dated the ALJ's decision (Tr. 478-83, 484-85, 487-88, 492-97, 500-05). The evidence pre-dating the ALJ's decision consists of the following:

> 1) In July 2010, the plaintiff returned to Dr. Carter and reported that he had chronic pain in his lower back but that his leg pain was "dramatically better."  The plaintiff reported difficulty with mobility but said that he about to leave the country on a cruise (Tr. 491); and

> 2) In December 2011, the plaintiff returned to the Royal Pain Center and said that narcotic pain medication was helpful and that his overall condition was better.  He rated his pain without medication at "8" out of 10, and his pain with medication at "4." The plaintiff reported that he was halfway done with his Christmas shopping (Tr. 476-77).

The evidence post-dating the ALJ's January 27, 2012, decision consists of the following:

> 1)  The plaintiff returned to the Royal Pain Center for treatment in March, June, and August 2012.  In March, he reported "constant" lower back pain and sporadic neck pain (which reportedly increased with driving).  Despite his complaints, the plaintiff was going to Carowinds amusement park with his children during spring break (Tr. 478-79).  In June, the plaintiff said that his back was the same and that his neck symptoms were "bothersome" (Tr. 480-81), and in August 2012, the plaintiff reported a recent increase in neck pain, which radiated into his left arm (Tr. 482-83); and

12

2) The plaintiff returned to Dr. Carter in March and November 2012. In March, Dr. Carter noted that he had not seen the plaintiff since July 2010 (almost two years earlier). The plaintiff reported "more neck pain recently." Dr. Carter prescribed muscle relaxers and anti-inflammatory medication and noted that the plaintiff was receiving pain medication from another source. He instructed the plaintiff to return "as needed" (Tr. 492). In November, Dr. Carter noted that the plaintiff's back symptoms were better, but his neck symptoms were increasing. An MRI of the plaintiff's neck showed degenerative disc disease and mild narrowing of the spinal canal (stenosis), but no evidence of disc herniations. An MRI of his back showed a solid fusion at the surgical site, with no significant herniations or stenosis." Dr. Carter opined that "I do not feel he can maintain gainful employment based on his current condition" (Tr. 497; *see also* Tr. 493-94 (back MRI), 495-96 (neck MRI)).

The Appeals Council found that the additional evidence did not provide a basis for changing the ALJ's decision (Tr. 1-5).

## ANALYSIS

The plaintiff was 48 years old on the alleged disability onset date and was 51 years old when the ALJ issued the decision (Tr. 157). He completed high school and worked as an irrigation specialist (Tr. 180, 185). The plaintiff argues the ALJ erred by: (1) failing to properly evaluate his credibility; 2) failing to properly evaluate the opinion of his treating physician, Dr. Carter; and 3) failing to be sufficiently specific as to the sit/stand option in the residual functional capacity ("RFC") assessment. The plaintiff further argues that the case should be remanded to the ALJ for consideration of new opinion evidence from Dr. Carter that was submitted to the Appeals Council.

### *Credibility*

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

> The court further acknowledged:

> > While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms

14

have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)   the individual's daily activities;

(2)   the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)   factors that precipitate and aggravate the symptoms;

(4)   the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)   treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

> (6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3. *See* 20 C.F.R. § 404.1529(c).

> Social Security Ruling ("SSR") 96-8p provides in pertinent part:
>
> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional level of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The ruling further provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

16

Here, the ALJ determined that the plaintiff had the RFC to perform sedentary work with an as-needed sit/stand option (Tr. 29). In evaluating the plaintiff's RFC, the ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible (Tr. 31). Specifically, the ALJ noted numerous inconsistencies in the evidence. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider inconsistencies in the evidence). Although the plaintiff originally alleged that he had been unable to work since March 2008, he later admitted that he had performed at least part-time landscaping work until shortly before his July 2009 back surgery (Tr. 30, 34; *compare* Tr. 46, 62, 157, 179 *with* Tr. 62-65, 70-71, 406). Furthermore, the plaintiff's complaints of disability were contradicted by the treatment record, which showed that his back symptoms improved after his July 2009 surgery and that, despite poor cooperation, he exhibited generally intact physical functioning during an August 2010 examination by Dr. Moore (Tr. 33-34; *see* Tr. 334, 338, 346, 405-07). Indeed, the plaintiff told Dr. Moore that he could he was capable of lifting 20 pounds (Tr. 28; *see* Tr. 406). Moreover, despite his allegedly disabling impairments, the plaintiff engaged in a wide array of daily activities including serving as the primary caregiver for two young children, sweeping, mopping, cooking, washing dishes, doing laundry, shopping for groceries and clothes, driving a truck, driving to Myrtle Beach for a vacation, and accompanying his children and his girlfriend on a seven-day cruise (Tr. 28, 30-31, 34; *see* Tr. 58-59, 74-76, 81-84, 194, 199-201, 228-31, 406). *See* 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor in assessing the credibility of an individual's statements). The ALJ also noted that when asked whether he had considered vocational rehabilitation after his July 2009 back surgery, the plaintiff responded, "It's kind of hard to go to school when you have two small children" (Tr. 30-31; *see* Tr. 72). The plaintiff's complaints regarding disabling respiratory impairments were belied by evidence that he continued to smoke, although he

17

had been medically advised not to do so (Tr. 27, 34; *compare* Tr. 302 *with* Tr. 296-97). *See Thornsberry v. Astrue*, No. 4:08-4075-HMH-TER, 2010 WL 146483, at *3-4 (D.S.C. Jan. 12, 2010) (affirming adverse credibility finding where the ALJ considered the claimant's continued smoking against medical advice, in addition to several other valid factors). The ALJ also reasonably found that the plaintiff's COPD stabilized with treatment (Tr. 27; *see* Tr. 295).

Based on the foregoing, the undersigned finds that the ALJ properly considered the plaintiff's credibility and provided ample support in determining that his statements concerning his symptoms were not fully credible. Furthermore, the ALJ's conclusion is supported by substantial evidence. Accordingly, this objection is without merit.

### Treating Physician

The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* § 404.1527(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §

404.1527(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5.  As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927].  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

On August 18, 2009, approximately six weeks after the spinal fusion, Dr. Carter opined in a Clinical Assessment of Pain Questionnaire that the plaintiff's pain was "present to such an extent as to be distracting to adequate performance of daily activities or work" (Tr. 253-54; *duplicated at* Tr. 345, 453-54).  Dr. Carter opined that the plaintiff could only sit and stand/walk for a total of about two hours each in an eight-hour day. He further opined that the plaintiff was limited to lifting 20 pounds rarely and ten pounds occasionally.  His impairments would likely produce good and bad days, and he would likely be absent from work about four days per month (Tr. 340-44; *duplicated at* Tr. 467).  Dr. Carter noted that the plaintiff was still recovering from spinal fusion, and he anticipated the plaintiff's return to work in the future (Tr. 341).

In the hearing decision, the ALJ set forth Dr. Carter's findings in the Clinical Assessment of Pain Questionnaire  (Tr. 33).  The ALJ also acknowledged Dr. Carter's RFC assessment (Tr. 340-44), but did not set forth the findings in detail (Tr. 30).  The plaintiff argues that the case should be remanded because the ALJ failed to provide a rationale for dismissing Dr. Carter's opinions.  However, as argued by the Commissioner, while "the ALJ could have been more artful in his discussion of Dr. Carter's opinions, the ALJ's analysis

19

was sufficiently specific to indicate that the ALJ discounted Dr. Carter's opinion and to identify the ALJ's reasons for doing so" (def. brief at 15).  As discussed above, Dr. Carter's August 2009 RFC assessment was rendered just six weeks after the plaintiff's back surgery, and Dr. Carter qualified his opinion by noting that the plaintiff was "was still recovering from a spinal fusion" and that he "anticipate[d] his return to work in the future" (Tr. 341). The ALJ stated that "significant weight" was given to Dr. Carter's postoperative notes indicating the success of the plaintiff's spinal fusion and discounting the plaintiff's complaints to normal postoperative discomfort (Tr. 34 (citing Tr. 333-34)).  The ALJ further noted that Dr. Carter's two-month postoperative note in September 2009 suggested that the plaintiff gradually increase his activities (Tr. 34 (citing Tr. 338)).  The ALJ also gave "substantial weight" to Dr. Moore's consultative examination, which was performed a year after the plaintiff's spinal fusion and "provide[d] a reliable summation based on a review of previous records combined with physical examination" (Tr. 34).  Dr. Moore's exam revealed the plaintiff had positive straight leg raising on the left side; reduced range of motion in his back but full range of motion in his neck; a normal gait (without an assistive device); intact sensation and reflexes; intact squatting, heel- and toe-standing, and heel-to-toe walking; and full 5/5 muscle strength (Tr. 405-09).

Based upon the foregoing, the undersigned finds that the ALJ's analysis was sufficiently specific to indicate that the ALJ discounted Dr. Carter's opinion and to identify the reasons for doing so.  Accordingly, this allegation of error is without merit.

### Appeals Council Evidence

The plaintiff further argues that the RFC finding is undermined by additional evidence submitted to the Appeals Council after the ALJ's decision.  Specifically, the plaintiff asserts that the case should be remanded pursuant to *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011) for consideration of an August 2012 MRI of his neck and of Dr. Carter's November 2012 opinion (pl. brief at 22-26).

20

The ALJ in *Meyer* issued a decision denying benefits and noted that Meyer failed to provide an opinion from his treating physician. 662 F.3d at 702. When Meyer requested review of his claim by the Appeals Council, he submitted a letter from a physician detailing the injuries (from a fall) and noting significant restrictions on Meyer's activity. The Appeals Council summarily denied review but made the letter part of the administrative record. The Magistrate Judge in *Meyer* recommended that the Commissioner's decision be affirmed because the doctor who authored the report was not a treating physician and thus the report should be accorded only minimal weight, and the district court adopted the Report and Recommendation. *Id.* at 704. The Court of Appeals, however, determined that the doctor was in fact a treating physician, the report submitted to the Appeals Council was the only report in the record from a treating physician, and the report constituted new and material evidence. *Id.* at 705. The court remanded for additional fact finding to reconcile conflicts between the newly submitted evidence and the evidence the ALJ had considered. *Id.* at 707. The court stated that when the Appeals Council receives additional evidence and denies review, the issue for the court is whether the ALJ's decision is supported by substantial evidence. *Id.*

The undersigned agrees with the Commissioner (def. brief at 16-17) that the additional evidence submitted to the Appeal Council does not undermine the substantial evidence supporting the ALJ's decision. Consistent with the ALJ's finding that the plaintiff's back impairment improved after his July 2009 surgery (Tr. 34), Dr. Carter's November 2012 treatment note states that the plaintiff's "back [wa]s better," although he still had low back pain (Tr. 497). To the extent that Dr. Carter noted "increasing neck pain recently," this reflects a deterioration in the plaintiff's condition after the ALJ's January 2012 decision (Tr. 497; *see* Tr. 492 (report of "more neck pain recently" in March 2012), 480 (complaint of "bothersome" neck pain in June 2012), 495-96 (August 2012 neck MRI)). Similarly, Dr. Carter's statement that the plaintiff could not "maintain gainful employment based on his

*current condition*" and that reapplying for disability benefits was "appropriate *at this time*" addresses the plaintiff's functioning as of November 2012 – almost a year after the period at issue in this case (Tr. 497) (emphasis added). On its face, the evidence does not relate to the period on or before the ALJ's decision, and there is no indication that the opinion pertains to the time period at issue. *See* 20 C.F.R. § 404.620(a) (claimant's application remains in effect until the ALJ's hearing decision is issued); *Boren v. Astrue*, No. 9:11-0520-TLW-BM, 2012 WL 4344066, at *7 (D.S.C. May 22, 2012) (where there was nothing to indicate how, or even if, additional evidence related back to the relevant time period, additional evidence did not undermine substantial evidence supporting the ALJ's decision), *adopted by* 2012 WL 4341807 (D.S.C. Sept. 21, 2012); *Bishop v. Astrue*, No. 1:10-2714-TMC, 2012 WL 951775, at *3-4 (D.S.C. Mar. 20, 2012) (same).  Unlike *Meyer*, the additional evidence in this case did not fill an evidentiary gap that played a role in the ALJ's decision. *Meyer*, 662 F.3d at 707.

Based upon the foregoing, this court finds that the ALJ's RFC finding is supported by substantial evidence, even in light of additional evidence submitted to the Appeals Council after the ALJ's decision.

### Sit/Stand Option

Lastly, the plaintiff asserts that the ALJ's finding regarding a sit/stand option was not sufficiently specific for the court's review (pl. brief at 27-29).   The plaintiff argues that, pursuant to Social Security Ruling ("SSR") 96-9p, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing" (pl. brief at 28 (quoting SSR 96-9p, 1996 WL 374185, at *7)). The ALJ's RFC finding and the hypothetical to the vocational expert provided for sedentary work with an option "to alternate between sitting and standing as needed without being off task" (Tr. 29, 97). In response, the vocational expert identified the jobs of receptionist, information clerk, and service clerk (Tr. 97-98). The ALJ questioned the vocational expert about the sit/stand option, and the

vocational expert responded that his testimony that the plaintiff would be able to perform the identified jobs was based upon his past experience and training in how the jobs are actually performed (Tr. 99-100).

The Fourth Circuit Court of Appeals has recognized that an ALJ is entitled to rely on a vocational expert's testimony about the availability of an at-will sit/stand option where the ALJ consulted the expert about the implication of an at-will sit/stand option on the occupational base. *Walls v. Barnhart*, 296 F.3d 287, 290-92 (4th Cir. 2002). Thus, courts in this district have held that RFC findings including the option to alternate sitting and standing at-will were sufficiently specific for judicial review. *See, e.g., Pierpaoli v. Astrue*, No. 4:10-2401-CMC-TER, 2012 WL 265023, at *3 (D.S.C. Jan. 30, 2012) ("Even though the ALJ did not specify the frequency of the need to change Plaintiff's sit/stand position, 'the reasonable implication of the ALJ's description was that the sit/stand option would be at [Plaintiff's] own volition.' . . . No greater specificity is required.") (citations omitted), *adopted by* 2012 WL 265023 (D.S.C. Jan. 30, 2012).

The plaintiff further argues that the vocational expert's testimony regarding an at-will sit/stand option conflicted with the *DOT* (pl. brief at 27). However, the *DOT* does not address sit/stand options, as the vocational expert noted (Tr. 99-100).  Accordingly, "it is unclear that there is a conflict between the [vocational expert's] testimony and the *DOT.* . . . Even assuming there was a conflict between the [vocational expert] and the DOT, the ALJ may rely on the [vocational expert's] professional experience to resolve a conflict." *Pierpaoli,* 2012 WL 265023, at *4. The ALJ questioned the vocational expert about the sit/stand option, and the vocational expert responded that the plaintiff would be able to perform the jobs he identified based upon his past experience and training in how the jobs are actually performed (Tr. 99-100).  Accordingly, the ALJ did not err in relying on the vocational expert's testimony.  *See id.* (finding that the ALJ did not err in relying on

vocational expert testimony that the plaintiff could perform certain jobs with an at-will sit/stand option even though the *DOT* does not provide for a sit/stand option).

Based upon the foregoing, this allegation of error is without merit.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision is based upon substantial evidence and free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

June 12, 2014
Greenville, South Carolina

24